## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| MEDAFOR, INC., | Civil No. 11-1920 (JRT/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| CRYOLIFE, INC., | |
| Defendant. | |

Christopher W. Madel and Damien A. Riehl, **ROBINS KAPLAN MILLER & CIRESI, LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for plaintiff.

Robert L. Rothman, Scott A. Wandstrat, and Jennifer L. Shelfer, **ARNALL GOLDEN GREGORY, LLP**, 171 17th Street N.W., Atlanta, GA 30363; and Kathryn J. Bergstrom and Jeremy L. Johnson, **GRAY PLANT MOOTY MOOTY & BENNETT, PA**, 80 South 8th Street, Suite 500, Minneapolis, MN 55402, for defendant.

Plaintiff Medafor, Inc. filed this action against CryoLife, Inc., alleging that CryoLife threatened to sue Medafor due to Medafor's reverse/forward stock split in December 2010. Medafor seeks a declaratory judgment stating that the reverse/forward stock split was valid under Minnesota law and that Medafor is not required to register with the Securities Exchange Commission ("SEC") pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78*l*(g). CryoLife now moves to dismiss Medafor's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Because the Court finds that there is no

private right of action under Section 12(g) of the Exchange Act and thus that Medafor lacks standing, the Court will grant CryoLife's motion and dismiss Medafor's complaint. The Court will permit Medafor to file an amended complaint.

## BACKGROUND

Medafor is a Minnesota corporation that manufactures a product containing Microporous Polysaccharid Hemospheres, a substance that facilitates blood clotting. (Compl. ¶ 6, July 14, 2011, Docket No. 1.)  CryoLife is a Florida corporation which markets and distributes medical products, including Medafor's product. (*Id.* ¶¶ 7-8.) CryoLife purchased large amounts of Medafor's shares, resulting in CryoLife's ownership of approximately 10% of outstanding common stock by June 2010. (*Id.* ¶ 11.)

In 2010, Medafor's Board of Directors realized that the company may be required to file a registration statement with the SEC under Section 12(g) of the Exchange Act. (*Id.* ¶ 15.)  Section 12(g) requires registration by companies with more than $10,000,000 in assets and shares held by 500 or more persons as measured on the last day of the fiscal year, which is December 31 for Medafor.  15 U.S.C. § 78*l*(g); 17 C.F.R. 240.12g-1. Medafor was nearing $10,000,000 in assets and had about 550 shareholders, and wanted to avoid registering with the SEC due to the associated costs and administrative burdens. (Compl. ¶ 16.)  Medafor notified its shareholders, including CryoLife, of its desire to avoid registration. (*Id.*)  Ultimately, Medafor planned to undertake a reverse/forward stock split ("reverse split"), whereby shareholders owning less than 5,000 shares would be given cash value for their shares, and those shares would be canceled. (*Id.* ¶¶ 17, 26.)

After Medafor bought out those shareholders holding less than 5,000 shares, a forward split would cause the shares of the remaining shareholders to be increased back to the number of shares each held prior to the reverse split. (*Id.*) The reverse split was calculated to reduce the number of shareholders holding stock in Medafor, so that Medafor would not need to register with the SEC pursuant to Section 12(g). (*Id.* ¶ 17.)

CryoLife, knowing that Medafor was on the verge of needing to register under Section 12(g), entered into a deposit agreement with 107 owners in order to ensure that Medafor would have more than 500 shareholders. (*Id.* ¶¶ 19-20.) By December 20, 2010, each of those 107 owners held 112.1 shares, representing 12,000 of the shares CryoLife owned. (*Id.* ¶ 22.) When Medafor executed its reverse split on December 31, 2010, the shares owned by the 107 owners pursuant to CryoLife's deposit agreement were canceled because each held less than 5,000 shares. (*Id.* ¶ 27.) CryoLife disputed the validity of the reverse split under Minnesota law and sent a letter to Medafor threatening to bring a lawsuit and report Medafor to the SEC for failing to register under Section 12(g). (*Id.* ¶¶ 31-32.) In that letter, CryoLife demanded word from Medafor by July 15, 2011 that Medafor intended to comply with Section 12(g), or CryoLife would "notify the other Medafor shareholders and take prompt legal action to require Medafor to honor the rights of its shareholders, which may include bringing this matter to the attention of the enforcement division of the SEC and filing any necessary lawsuit." (Compl., Ex. C at 4, Docket No. 1-1.)

On July 14, 2011, Medafor filed the present action in anticipation of CryoLife's expected lawsuit, seeking an order determining the parties' rights under the Declaratory

Judgment Act, 28 U.S.C. § 2201(a); specifically, Medafor seeks a judicial determination of whether it must register pursuant to Section 12(g), which requires the Court to determine whether the reverse split was valid under Minnesota law.  CryoLife now moves to dismiss for lack of subject matter jurisdiction.

## DISCUSSION

### I.    STANDARD OF REVIEW

CryoLife moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  A Rule 12(b)(1) motion requires the Court to examine whether it has the authority to decide the case.  *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008).  It is the plaintiff's burden to establish that jurisdiction exists.  *Osborn v. United States,* 918 F.2d 724, 730 (8th Cir. 1990).  Under Article III, § 2, of the Constitution, federal courts cannot exercise judicial power unless there is an actual case or controversy.  *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).  In resolving a 12(b)(1) motion, the Court is not limited to a consideration of the face of the complaint, but may also consider evidence submitted by the parties.  *Gilmore v. Nw. Airlines, Inc.*, 504 F. Supp. 2d 649, 653 (D. Minn. 2007).

### II.    STANDING

CryoLife argues that the Court lacks subject matter jurisdiction because there is no case or controversy.  The Declaratory Judgment Act permits judicial intervention only where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (internal quotation marks and citation omitted). The Declaratory Judgment Act's controversy requirement is the same as that in Article III of the Constitution; the plaintiff must satisfy constitutional standing requirements to proceed. *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 463 (8th Cir. 2004).

A plaintiff has standing if (1) he has suffered injury in fact, (2) the injury is fairly traceable to the defendant's actions, and (3) a favorable decision will likely redress the injury. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). In analyzing the injury, "[t]he essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action." *County of Mille Lacs,* 361 F.3d at 464 (quotation marks and citation omitted). When a plaintiff seeks declaratory relief, he "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346-1347 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991)).

Medafor's standing to seek declaratory relief hinges on whether CryoLife's threats to sue constitute an injury in the future.[1] To constitute an injury in fact sufficient to support constitutional standing, the lawsuit must be substantially likely to occur.

---

[1] The other elements of standing – traceability and redressability – are clearly satisfied. The expected lawsuit is traceable to the defendant because CryoLife sent Medafor a letter threatening to sue. The Court may redress the injury by declaring that Medafor's actions effectively circumvented the need to register under Section 12(g).

Medafor anticipates that CryoLife would have brought its suit under Section 12(g) of the Exchange Act, which does not explicitly create a private right of action.  Therefore, in order to determine whether the lawsuit is substantially likely to occur, and thus support Medafor's standing to seek a declaratory judgment, the Court proceeds to inquire whether Section 12(g) confers an implied private right of action.

### A.     Implied Private Right of Action Under Section 12(g)

Whether Section 12(g) supplies an implied private right of action is a matter of first impression in the Eighth Circuit.  To determine whether Congress intended to create a private cause of action, the Court must examine "the language and focus of the statute, its legislative history, and its purpose . . . ." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)).  As with any question of statutory interpretation, the central mission is to uncover Congress' intent.  *Id.* at 576.  Upon considering the statute's text, legislative history, and purpose, the Court finds that Section 12(g) does not confer a private right of action, and, therefore, that Medafor lacks standing to seek declaratory relief.

### 1.     Language and Focus of Section 12(g)

The plain language of Section 12(g) requires an issuer of securities to register with the SEC if it has more than $10 million in assets and 500 or more shareholders.[2]  15

---

[2] The exact language reads:

**(g)  Registration of securities by issuer; exemptions**

(Footnote continued on next page.)

U.S.C. § 78*l*(g)(1).  The section does not mention the possible consequences of failing to register.  *See* 15 U.S.C. § 78*l*(g).  Section 12(g) refers registrants to subsection 12(b) for a list of information required in the registration statement.  *Id.*  Several provisions within Section 12(b) grant the SEC authority to require other information it deems "necessary or appropriate for the protection of investors . . . ."  15 U.S.C. § 78*l*(b)(1)(L); *see also* 15 U.S.C. § 78*l*(b)(2)-(3).  But references to the protection of investors alone do not create a private right of action for those investors to enforce Section 12(g).  For example, Section 17(a) of the Exchange Act contains similar language that requires brokers and clearing agencies to file certain reports as the SEC deems "necessary or appropriate in the public interest, for the protection of investors," and "necessary or appropriate for the safeguarding of securities and funds."  15 U.S.C. §§ 78q(a)(1)-(2).  The Supreme Court

---

(Footnote continued.)

> **(1)** Every issuer which is engaged in interstate commerce, or in a business affecting interstate commerce, or whose securities are traded by use of the mails or any means or instrumentality of interstate commerce shall--
>
> . . .
>
> **(B)** within one hundred and twenty days after the last day of its first fiscal year ended after two years from July 1, 1964, on which the issuer has total assets exceeding $1,000,000 and a class of equity security . . . held of record by five hundred or more but less than seven hundred and fifty persons,
>
> register such security by filing with the Commission a registration statement . . . with respect to such security containing such information and documents as the Commission may specify comparable to that which is required in an application to register a security pursuant to subsection (b) of this section. . . .

15 U.S.C. § 78*l*(g)(1).  SEC Rule 12g-1 modified the dollar amount from $1,000,000 to $10,000,000.  17 C.F.R. 240.12g-1.

analyzed that language in Section 17(a) and concluded that Congress designed the section solely to provide **the SEC**, not private parties, with the tools necessary to protect investors. *Touche Ross*, 442 U.S. at 570.

Additionally, the Exchange Act already provides an explicit private cause of action for investors who, relying on false or misleading statements made in registration statements including those in Sections 12(g) and 13(a),[3] purchased or sold securities at a price affected by such misstatements. 15 U.S.C. § 78r(a). The Exchange Act also provides explicit private rights of action under Sections 9(e) and 16(b) for violations relating to trading, endorsement, and unfair use of information. 15 U.S.C. §§ 78i(e), 78p(b). These explicit private causes of action show that "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross*, 442 U.S. at 572. Thus, the language of Section 12(g) and related provisions fails to create a definitive private right of action under Section 12(g).

### 2. Section 12(g)'s Legislative History

The legislative history of Section 12(g), which was added as an amendment in 1964, is silent as to a private cause of action.[4] The focus of the section was to provide the

---

[3] Registration under Section 12 triggers annual reporting requirements detailed in Section 13 of the Exchange Act. 15 U.S.C. § 78m.

[4] Medafor points to Senator Steiwer's uncontested statement that "violations of Section 12 may give rise to civil liabilities not expressly sanctioned in the Act." *Kerber v. Kakos*, 383 F. Supp. 625, 630 (N.D. Ill. 1974) (citing 78 Cong. Rec. 8586 (1934) (remarks of Senator Steiwer)). The House Report also emphasized the importance of disclosure to the investor, which shows that the reports "do not exist merely for the administrative convenience of the

(Footnote continued on next page.)

SEC with "all of the tools necessary for the adequate protection of investors." H.R. Rep. No. 88-1418, at 6 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3013, 3018. The House Report explains Section 12(g) in great detail, primarily listing what must be reported to the SEC. H.R. Rep. No. 88-1418, at 14-16 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3013, 3027-29.

A letter from the Board of Governors of the Federal Reserve System comes closest to declaring rights for investors. It states that the purpose of Section 12(g) "is to provide for stockholders of corporations whose securities are widely distributed, but not registered on an exchange, the information and safeguards which that act requires with respect to securities that are so registered." H.R. Rep. No. 88-1418, at 31 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3013, 3045 (letter from William McChesney Martin, Jr., June 21, 1963). This statement focuses on providing information and safeguards, and falls short of mentioning any rights of stockholders or causes of action they may be able to maintain under the section. Because the legislative history is largely silent as to a private cause of action at the time of the 1964 amendments, it is unlikely that Congress contemplated a private remedy arising under Section 12(g) when it was enacted.

---

(Footnote continued.)

SEC," but are "aimed at protecting against direct private injury." *Kerber*, 383 F. Supp. at 628-29 (citing H.R. Rep. No. 1383, at 11 (1934)). But these records are from the 1934 enactment of the Exchange Act, and Section 12(g) was not added to the Exchange Act until 1964. The *Kerber* opinion states that although 12(g) was not enacted until 1964, the desire to protect "against direct private injury" continued into Section 12(g), making the 1934 remarks relevant to Section 12(g). *Kerber*, 383 F. Supp. at 629. However, there is little in the 1964 legislative history to support that claim.

### 3. *Kerber* and *Touche Ross*

This Court's finding that there is no private cause of action under Section 12(g) conflicts with a case from another district. *See Kerber v. Kakos*, 383 F. Supp. 625 (N.D. Ill. 1974). The *Kerber* opinion, however, in the view of the Court, is no longer persuasive after the Supreme Court's *Touche Ross* decision.

Prior to *Touche Ross*, one court held that because Congress did not show intent to preclude it, there was an implied private right of action under Section 12(g) of the Exchange Act. *Kerber*, 383 F. Supp. at 630. *Kerber*'s two-step analysis first inquired whether plaintiffs were within the class of individuals that the statute was designed to protect, and then asked whether the language of the statute manifested a clear intent to deprive such persons of a private remedy. *Id.* at 627. In effect, absent clear congressional intent to the contrary, *Kerber* embraced the existence of a private remedy as the default position, a view it rooted in the common law tradition rather than the language of the statute. *Id.*

Five years later, the Supreme Court decided in *Touche Ross* that there was no implied private right of action under Section 17(a) of the Exchange Act because Congress had not manifested its intent to include that right. *Touche Ross*, 442 U.S. 560, 569-71. The Court primarily focused on the statute's language and legislative history in reaching this conclusion. *Id.* at 569-71. *Touche Ross* effectively turns *Kerber*'s default position

on its head.[5]  The current Supreme Court test, as set forth in *Cort v. Ash* and modified by *Touche Ross*, focuses on whether Congress intended to **include** a private right of action, *id.* at 569-71, rather than on whether Congress intended to **preclude** that right, *Kerber*, 383 F. Supp. at 627, 630.

In light of *Touche Ross*, the Court finds that Section 12(g) does not create an implied private right of action.[6]  Because there is no private right of action under Section 12(g), CryoLife lacks standing to sue Medafor under that section, rendering it substantially unlikely that the future injury of which Medafor complains – namely, the

---

[5] Because *Touche Ross* was decided after *Kerber* and dramatically changed the focus of the implied private right analysis, it is likely that *Kerber* is no longer good law, though it has not been expressly overruled.  *Kerber* has only been followed once in an unpublished district court case in Florida, which adopted the private right under Section 12(g) without analysis.  *See Cohen v. Alan Bush Brokerage Co.*, Nos. 85-8018, 85-8164, 1987 WL 65038 (S.D. Fla. Nov. 16, 1987).

[6] Medafor urges the Court to treat Section 12(g) as courts have treated Section 10(b) of the Exchange Act.  Section 10(b) prohibits the use of manipulative or deceptive devices in connection with the purchase or sale of securities.  15 U.S.C. § 78j(b).  Prior to the *Touche Ross* decision, the Supreme Court recognized an implied private right of action under Section 10(b).  *Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13 (1971).  After *Touche Ross*, the Eighth Circuit held that because *Touche Ross* did not explicitly eliminate the private right under Section 10(b), the right survived even though the implied private right analysis had changed.  *Berger v. Bishop Inv. Co.,* 695 F.2d 302, 306-07 (8th Cir. 1982); *see also Wachovia Bank and Trust Co. v. Nat'l Student Mktg Corp.*, 650 F.2d 342, 353 (D.C. Cir. 1980).  The Eighth Circuit's holding was not without Supreme Court guidance; a footnote in the *Touche Ross* opinion explains that in finding a private right of action under Section 10(b), the Court "simply explicitly acquiesced in the 25-year-old acceptance by the lower federal courts of an implied action under § 10 (b)." *Touche Ross*, 442 U.S. at 577 n.19.  The Court declined to do so for Section 17(a) because it lacked a "similar history of longstanding lower-court interpretation," since only one district court had found a private right of action under Section 17(a).  *Id.*  Similarly, the *Kerber* case, standing alone, does not constitute longstanding judicial application.  The Court therefore declines to treat Section 12(g) as the Eighth Circuit treated Section 10(b) after the *Touche Ross* decision.

prospect of an imminent lawsuit – will occur.[7] Therefore, Medafor lacks standing to pursue a declaratory judgment and the Court dismisses its claims. Because Medafor argued in the hearing on this matter that it may satisfy diversity jurisdiction requirements for its state-law claim, the Court grants Medafor thirty days in which to amend its complaint.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that CryoLife's Motion to Dismiss [Docket No. 5] is **GRANTED**.

It is **FURTHER HEREBY ORDERED** that Medafor shall have thirty (30) days from the date of this Order to file an amended complaint.

DATED: March 30, 2012　　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[7] On a fuller record, CryoLife may lack standing to sue even if there were a private cause of action under Section 12(g) because it appears that CryoLife has not purchased or sold Medafor securities in the relevant time period. Only purchasers or sellers of a security who relied on a material misrepresentation have standing to sue under Section 10(b). *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-32 (1975); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 248-50 (1988). Likewise, two district courts have dismissed claims under Section 12(g) and the similar Section 13(a) because the plaintiffs had not purchased or sold stock in the relevant time period. *See Heard v. Savage*, No. 75-0449, 1978 WL 1145, at *2 (W.D. Okla. Oct. 12, 1978); *In re Penn Cent. Sec. Litig.*, 347 F. Supp. 1327, 1340 (E.D. Pa. 1972). Medafor has not alleged that CryoLife purchased or sold any securities in the time period in question, and counsel for CryoLife indicated that its client had not done so. However, the record lacks evidence to support this assertion.